*Smith & Peck, for complainant.*
*Upham & Keith, for defendant.*

WASHINGTON,
*March,*
1833.

Penniman
*vs.*
Robinson.

---

The Town of MONTPELIER *vs.* The Town of CALAIS.     WASHINGTON,
                                                                                          *March,*
                                                                                          1833.

That a man's receiving aid, while a prisoner, from the town where the pris-
on is located, on a previous pledge of *sufficient personal property to secure a*
remuneration, does not prevent his gaining a settlement by seven years resi-
dence in the town from which he is brought to prison.

This cause came up from the County Court on the excep-
tions, filed to the decisions of the County Court, on trial.
The bill of exceptions, allowed by said County Court was
as follows, to wit:

This was an action of *assumpsit* for money paid in the

WASHINGTON,
March,
1833.

Montpelier
vs.
Calais.

support of one Stoddard, a pauper—as by the declaration, which is referred to. Plea, the General Issue—and trial by jury.

It was agreed by the parties, on trial, that, in 1832, Stoddard had his legal settlement in Montpelier, and, that he still retained it there, unless he had subsequently acquired a settlement in Calais. It was further agreed, that, for more than seven years before the expenses were incurred, for which the action was brought, Stoddard had resided in Calais, and, that the money sued for was properly expended by the plaintiffs in the support of Stoddard, while confined in the County Jail in Montpelier in October A. D. 1831 : he having been brought from Calais and committed to said prison. It was also admitted, that a proper demand in writing was made on the defendants more than fifteen days before the commencement of the action.

In order to obviate the effect of said residence in Calais, the defendants undertook to show, that, before the expiration of said seven years residence, said Stoddard was committed to said prison upon another occasion, and, that the plaintiffs then assisted and relieved him as a pauper. For this purpose the defendants called as witnesses, Mr. Dewey, Daniel Baldwin, and Timothy Hubbard.

Mr. Dewey testified, that, during the first confinement of Stoddard in the jail aforesaid, which was in January and February 1830, the witness was jailer ; that Stoddard informed him, he was poor and unable to support himself in jail ; that the witness thereupon applied to said Timothy Hubbard, overseer of the poor in Montpelier, to make provision for the support of said Stoddard ; that Stoddard took the poor debtor's oath on the 1st day of February, A. D. 1830, but was not then liberated, because his expenses in jail and the fees of the Jail Commissioners remained unpaid ; and that, within a few days thereafter, the said Timothy Hubbard drew an order on the said Baldwin, town treasurer, in favor of the witness, for his claim for the board of said Stoddard, who was thereupon liberated from prison.

Timothy Hubbard testified, that he did not attend to the first application, made by Dewey—nor until after Stoddard had taken the poor debtor's oath ;—that, upon a

second application by said Dewey, the witness did attend to the subject—that he refused any relief or interferance, except on condition that Stoddard would first make over to him his tools, then in Calais, as a security for the repayment of what the witness might expend for him; that Stoddard accordingly made a written pledge to witness of his tools aforesaid for the purpose aforesaid, and the witness thereupon drew the order aforesaid in favor of Dewey, and paid to the Jail Commissioners their fees, and charged the same to the town of Montpelier;—that the witness never had actual possession of the tools, but had a right to take them when he pleased;—that, after a while, Stoddard brought to the witness a note against one Ormsbee, for a sum more than sufficient to cover all the expenses, which the witness had assumed for said Stoddard, and wished to exchange it for said pledge of tools, to which witness assented;—that the witness lodged said note with said Baldwin; and that, from the avails of said note, the town of Montpelier was fully indemnified for all expenditures for said Stoddard.

WASHINGTON,<br>March,<br>1833,<br><br>Montpelier,<br>vs.<br>Calais

Daniel Baldwin testified, that, as town treasurer, he received and paid the order aforesaid, in favor of Dewey, and charged the same to the town, in his accounts as treasurer;—that he also received of said Hubbard the note aforesaid against Ormsbee, with notice of its being pledged for the purpose aforesaid;—that he received payment of said note from Ormsbee, being about $4,50, and gave credit to the town therefor, and paid over to Stoddard a small balance of the avails of said note, about the 2d day of March 1831;—and that he believed his account as treasurer, including the items of charge and credit aforesaid, were posted and settled with the town in the usual manner.

This was all the evidence; and the defendants insisted and urged the Court to charge the jury, that, from their showing, they were entitled to a verdict; but the Court charged that, upon the aforesaid evidence, if believed, the jury ought to return a verdict for the plaintiffs. Verdict and judgement for the plaintiff. And to the charge aforesaid the defendants except. Exceptions allowed, and the case ordered to the Supreme Court.

WASHINGTON,
March,
1833.

Montpelier
vs.
Calais.

*Argument in support of exceptions.*—It is admitted, that the settlement of the pauper is in Montpelier, unless he has acquired a settlement in Calais, by his residence there for seven year subsequent to 1823, under the 8th clause of the 1st section of the act of 1817. That clause declares, that "any person, having a settlement in any town in this state, and of full age, who shall hereafter reside in any other town in this state, for the term of seven years, and, during said term, maintain himself, or herself and family *and not become chargeable to either of said towns,* shall be adjudged to gain a settlement in the town in which he or she may so reside." 1 Comp. Stat. p. 382.

It appears, that, before the expiration of the seven years residence in Calais, the pauper was committed to prison in the County jail in Montpelier, on a civil process, and, being poor and unable to support himself in jail, application was made by him, through the jailor, to the overseer of the poor of Montpelier, for provision for his support, and the overseer drew an order in favor of the jailor on the town treasurer, for the expense of the pauper's board, and paid the Jail Commissioner's fees and charged the same to the town. The town treasurer received and paid the order, and charged the amount to the town in his account, as treasurer, and the same was settled with the town in the usual manner. These facts are decisive, that the pauper did become *chargeable* to the town of Montpelier during his seven years residence in Calais, and, of themselves, take the case out of the clause of the statute referred to.— The town of Montpelier, after its overseer, on a formal application made to him in behalf of the pauper has, in his official character, acted upon the application, and furnished relief, and his act has been sanctioned by the town by an allowance of the account, cannot be permitted to say that the pauper has not become *chargeable* to the town.— The word *chargeable,* means a *charge in fact,* and a person who applies for, and obtains relief, from the town, is necessarily *chargeable* to the town, and no one can acquire a settlement under the statute, by a residence of seven years, unless he has maintained himself without receiving relief or support from the town. 13 Mass. 460; 5 Con. 384.

The fact, that the pauper, at the time the relief was af-

WASHINGTON,
March,
1833.

Montpelier
vs.
Calais.

forded him, made and signed to the overseer of Montpelier, a written pledge of the tools of his trade, as security for the repayment of the expenses incurred for him by the town, and the repayment afterwards, by the pauper to the town, of the account of the expenses, cannot alter the case.

There was no delivery of the tools, and it is essential to every pledge of a personal chattle, that it should be accompanied by delivery of possession, or it will not be valid. 2 Aik. Rep. 111. The pledge, therefore, was a nulity, of no effect in law. It is evident, then, that, before the note was given, the pauper was *chargeable* to Montpelier, for Montpelier could have obtained no indemnification from the pledge.

But the pretended security was wholly unavailable on other grounds. The pauper's settlement, at the time the expenses were incurred, was in Montpelier; and he was utterly destitute of property, except, perhaps, a little household furniture, and a few tools of his trade. The provision, made by law for the relief of the poor, is a charitable provision.

The town, where a person is settled, is under a legal obligation to provide for him, when in indigent circumstances and in need of assistance ; and it would seem, that any promise or contract, obtained from him to reimburse the expenses, on condition of relief being furnished him, must be void. It is clear, that monies expended for the support of a pauper could not be recovered of the pauper ; and if the law will not imply a promise to repay the expenses incurred, an express promise, extorted at the time, can not be enforced. It was oppression, and a violation of duty to take advantage of the pauper's necessities, and extort from him a pledge of the tools of his trade. If such a transaction is legal, then overseers may, in any case, strip the paupers family of every article of household furniture necessary for their use, on condition of furnishing relief; or may take the paupers note for the expenses, and send him immediately to prison. If the pauper's settlement had not been in Montpelier, but in some other town, no pledge of security would have been extorted from him ; but such town would have been called upon and obliged to reim-

Washingtog,
March,
1833.

Montpelier
vs.
Calais.

burse the expenses, on the ground, that the pauper had been *chargeable* to Montpelier.

But, assuming the security taken to be valid, or, that a town always has a right of action against the pauper for an indemnity for the support furnished him, yet it was uncertain, whether the security would ever be rendered available; or the town be indemnified by a delivery of the tools, or repayment of the expenses. Indeed, the security to reimburse the expenses necessarily supposes the pauper to have become *chargeable*, and the after reimbursement of the expenses, whether obtained on the security taken, or otherwise, does not negate, but affirm the fact, that he had become *chargeable*. Having applied as a pauper for assistance, and received relief from the overseer of Montpelier, he became actually *chargeable* to the town, and it is altogether immaterial, whether the expenses, incurred, were afterwards repaid to the town, or not. Burr. Sett. Cases, p. 5, 415, 488, 522; 20 Com. L. Rep. 351; 5 Conn. 384. The Legislature have enacted a positive rule, by which this question is to be decided; and it is laid down, that, in all questions relative to settlements, it is the safest and wisest way to adhere to the letter of the law. 1 T. Rep. 558. The rule, although arbitrarily assumed, is to be strictly observed, and, as was said by an eminent judge in a similar case, " we must not render the rule uncertain, or the line of discrimination given by it variable or shifting, by yielding to arguments of expediency, or by reasoning upon the general purposes of the rule."

*Counsel for the plaintiff.*—This question will be easily solved, when the precise meaning of the phrases " *maintain himself*" &c. and " *not become chargeable*," is ascertained.— The two expressions mean one and the same thing. If a person maintains himself, he does not become chargeable to any one, and if he does not become chargeable to any one, he maintains himself. The person who pays for all he receives maintains himself.

The meaning of the *term* " chargeable" is *expensive costly*. The statute, therefore, must be construed the same as if it had said, become *expensive*, &c.

It will be noticed, that, in this case, the application to

Washington,
March,
1833.

Montpelier
vs.
Calais.

the overseer was made by the jailor; that the overseer refused the aid required. He did not admit, that the prisoner was chargeable to the town of Montpelier. Upon a second application, however, he consented to pay the sum required for the liberation of the prisoner. But this was done in pursuance of a *contract*, by which contract he received an *indemnity*, and that security proved *more than sufficient*.

In this case, therefore, there was no legal obligation upon the town of Montpelier; for Stoddard was abundantly able to pay, himself.

The statute means legally chargeable.

Can it, with propriety, be said, that a person has become chargeable to a town, until the town has *incurred expense in support of such person*.

There was no legal liability on the town of Montpelier. For the event proves, that Stoddard was of sufficient ability to support himself. And the conduct, as well as the language, of the overseer, repels the idea, that he considered the town liable, or that he intended to assist in any greater extent, than the secury it received.

And does the fact, that the town paid the money in the first instance, vary the case?

Does the *guest* become chargeable to the landlord, because the latter pays for the meat and drink of the former?

In the case of *Londonderry* vs. *Acton*, 3 Vt. Rep. 132, it was said, no person can be chargeable while he "has the means of supporting himself." When a "person has property, whether real or personal, he must expend that in his own support, before he can make an effectual or legal call upon the overseers of the poor for relief."

In Brayton, 175, it was decided, that "a person, brought from one town and confined in jail in another, is a transient person.

Sec. 11 of statute, p. 373, makes it the duty of the towns to support *poor strangers*, suddenly taken sick, &c. and declares, "*that if such person be not of sufficient ability to defray the expense*, the town may recover of the town in which such stranger was legally settled, &c.

The present case, then, stands exactly upon the same footing as the case of a stranger, passing through a town,

73

WASHINGTON,
March,
1833.

Montpelier
vs.
Calais.

and for some cause, happening to be destitute of money, and requiring the assistance for which provision is made. Now, in cases of this description, towns are obliged to furnish assistance without any inquiry respecting the ability of the stranger. Now, suppose, the stranger to be worth an independent fortune, and, after he has recovered, amply indemnifies the town. Would it not be an abuse of language to say, that this stranger had been chargeable to said town?

The opinion of the Court was pronounced by

HUTCHINSON, C. J.—It is agreed that Stoddard once had his legal settlement in Montpelier; and the only question, now to be decided, is, did Stoddard in such a sense receive support from Montpelier, during his seven years residence in Calais, as to prevent his gaining a legal settlement in the latter place? The present action is brought to recover the expenses, to which the town of Montpelier was subjected, for the support of Stoddard, a pauper, while imprisoned in the County jail in Montpelier, since he had resided seven years in Calais. If he became chargeable to either town, in the sense of the statute, before the seven years had expired, he gained no settlement in Calais.

With regard to the assistance furnished during the first imprisonment of Stoddard, which was before the seven years expired, it seems, that the jailer called upon Hubbard, the overseer of the poor of Montpelier, and requested aid for Stoddard, who had before told the jailer of his poverty. Hubbard gave no heed to this call. Afterwards, and after Stoddard had sworn out of jail, he was again applied to for assistance, and refused to interfere, till Stoddard gave him a bill of sale of his tools, that were at Calais; which were afterwards redeemed by a note against a third person, which proved sufficient to reimburse the expenditure made by Hubbard, and left a balance to be paid back to Stoddard. If Hubbard as overseer, on this occasion, had furnished the little aid of four or five dollars, as an expenditure of the Town's money, there could be no doubt but that Stoddard would have retained his former settlement in Montpelier. On the other hand, if Hubbard had furnished this money from his own funds, on receiving the pledge of tools, there could have

WASHINGTON,
March,
1833.

Montpelier
vs.
Calais.

been no pretence, that this would prevent his gaining a settlement in Calais. Whatever difficulty there is, re-results from the money's being drawn from the town treasury. But this, upon full concideration, seems to be but the lending of the town's money to the pauper on a pledge of his own property or security. Stoddard, in as literal and emphatical a sense, procured this support for himself, as if he had procured it from any other source, upon pledge of the same property.

The question is not, who handled the money for his relief? but who bore the burden of this relief? Stoddard clearly bore this, himself. He not only paid the money in the end; but he kept the town all the time safe from loss.

If the town had furnished this assistance upon their own responsibility, and wholly at their own risk, probably, their being indemnified by an after payment, might not have varied the case, according to the case cited from Connecticut. Yet we must not forget, that the eleventh section of the statute, which regulates the giving aid by towns to transient person, gives a remedy against the town, where the person relieved belongs, only in the event of such person's being unable to respond.

This section prescribes the remedy to be general *assumpsit* for monies laid out and expended. Were it not for this, I think the town suing, in such a case, would need to aver in their declaration, that the person relieved was unable to respond.

We consider the charge of the County Court correct, authorizing a verdict for the plaintiff, and their

Judgement is affirmed.

*Merrill & Spaulding*, for plaintiffs.
*Samuel B. Prentiss* for defendants.